UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TETYANA SPOLITAK,

        Plaintiff,

v.

STATE SERENE, LLC,
a Michigan limited liability company,

and

NAOMI W. LOY,

        Defendants.

Case No.: 23- _____

Hon.

Magistrate-Judge

_____/

FAIR HOUSING CENTER
OF METROPOLITAN DETROIT
Co-Counsel for Plaintiff
Steve Tomkowiak (P40042)
5555 Conner St., Suite 244
Detroit, MI  48213
(313) 579-3247 x 6
stomkowiak@fairhousingdetroit.org

GWINN LEGAL PLLC
Co-Counsel for Plaintiff
Daniel A. Gwinn (P53663)
Laura Bradshaw-Tucker (P42652)
900 Wilshire Drive, Suite 104
Troy, MI  48084
(248) 970-0310
daniel@gwinnlegal.com
laura@gwinnlegal.com

_____/

There is no other pending or resolved civil action arising out of
the transaction or occurrence alleged in the complaint.

1

## PLAINTIFF TETYANA SPOLITAK'S COMPLAINT FOR INJUNCTIVE, DECLARATORY AND OTHER RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff TETYANA SPOLITAK, by her Co-Counsel, FAIR HOUSING CENTER OF METROPOLITAN DETROIT and GWINN LEGAL PLLC, files her Complaint and Demand for Injunctive and Other Relief and Demand for Jury Trial against the above-named Defendants and alleges:

## SUMMARY

Plaintiff Tetyana Spolitak, 63, has rented a room in a building located on State Street in Ann Arbor, owned by Defendant State Serene, LLC, since 2017[1]. Ms. Spolitak signed a written "Month-to-Month Room Lease Agreement" before she first moved into the building on or about July 30, 2017.

Until October 2023, Defendant State Street Serene had collected Ms. Spolitak's rent each month and made no effort to cancel the rental agreement.

A few years after moving into Defendants' State Street building, Ms. Spolitak was diagnosed with breast cancer, which has now progressed to Stage 4. In 2021, the cancer had metastasized to Ms. Spolitak's lungs. She underwent multiple major surgeries, radiation and chemotherapy and in the fall of 2023 faced the prospect of additional surgeries and continued chemo- and immunotherapy.

---

[1] To avoid revealing any personal protected information, the street address is not listed in this Complaint.

These facts came to Defendants' attention around late September/early October 2023 when a complaint about an issue stemming from Ms. Spolitak's disability, was made against her.[2] On October 10, 2023, the same day Ms. Spolitak advised Defendants, through their counsel, that the issue had already been remedied,[3] she received a Notice to Quit (Exhibit 2). The Notice, dated November 6, 2023,[4] informed her that her month-to-month tenancy was being terminated. She was asked to move out by November 8, 2023. No reason was given for the decision to end the month-to-month arrangement after more than six years. To Ms. Spolitak's knowledge, no other resident of the building saw their month-to-month arrangement terminated.

On or about October 27, Ms. Spolitak attempted to pay her monthly rent, but her payment was rejected.

_____

[2] The combined effects of the cancer treatment and the surgery had left Ms. Spolitak extremely weak and resulted in altered bowel functioning. As a result, on one occasion in September 2023, she inadvertently left feces on the toilet of a shared restroom on the building's first floor. When another resident complained, Ms. Spolitak, mortified, immediately cleaned and disinfected the bathroom, and has continued to clean the bathroom on a daily basis.

[3] In an email dated November 6, 2023, Defendants' counsel James Fink advised a representative of the Fair Housing Center that the matter had been resolved (Exhibit 1).

[4] There was an error in the date. Since the document was received October 10, 2023, it must have been signed a few days before.

On November 4, 2023, Ms. Spolitak was served a second (properly dated) Notice to Quit, signed by Mr. Fink that same day. The move-out date was listed as November 6, 2023. (Exhibit 3).[5]

Given Ms. Spolitak's disability, the process of moving, coupled with the stress of such a move while she is receiving treatment, would undermine her already fragile health. Through the Fair Housing Center, which was advocating on her behalf (Exhibit 4), she asked Defendants to grant her, in effect, a modification of the lease from month-to-month to a set term of roughly 10 months (through September 30, 2024) as a reasonable accommodation under the Fair Housing Amendments Act 42 USC § 3604 ("FHAA") and Michigan's Persons with Disabilities Civil Rights Act, MCL § 37.1501 et seq. ("PWDCRA").

Defendants, through their attorney, offered to allow Ms. Spolitak to continue as a tenant through the beginning of January 2024 (Exhibit 5). In response to Ms. Spolitak's assertion that this short extension of the month-to-month arrangement would fail to provide the stability she needs, Defendants stated no further continuation of the lease would be considered and threatened to file suit for eviction that week (Exhibit 6). Paradoxically, on or about December 8, 2023, Ms. Spolitak

---

[5] Plaintiff submits that the first Notice was deficient as it was post-dated; and the second Notice was deficient because it failed to provide 30 days' notice of the anticipated move-out date.

received a notice of a rent increase, effective January 1, 2024, from Defendants (Exhibit 7).

Plaintiff submits that the timing of the Notice to Quit, immediately on the heels of Defendants' receiving information regarding the severity of Ms. Spolitak's disability, demonstrates that the termination was not a "simple end of month to month tenancy case," but deliberate discrimination on the basis of a disability in violation of the FHAA and the PWDCRA. The discriminatory nature of Defendants' conduct is demonstrated not only by the timing of the Notice Quit but by Defendants' unwillingness to allow Ms. Spolitak anything more than a short continuation of her lease, where — apart from the severity of her disability — there is no reason she should not be allowed to continue to rent a room from Defendants (especially where she is willing to pay the higher rate). Defendants' conduct also constitutes a refusal to grant a modification of rules as an accommodation under both federal and state law. The threat of immediately filing a suit to evict constitutes retaliation against Ms. Spolitak for requesting the accommodation.

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Tetyana Spolitak is a natural person, and resident of the City of Ann Arbor, County of Washtenaw, and State of Michigan.

2.      Defendant State Serene, LLC, on information and belief, is a Michigan limited liability corporation.

3.      Defendant Naomi W. Loy, on information and belief, is a natural person, and resident of the City of Ann Arbor, County of Washtenaw, State of Michigan.

4.      On information and belief, Defendant Naomi W. Loy is the registered agent for State Serene, LLC.

5.      Unless otherwise indicated, Defendants State Serene, LLC and Naomi Loy are collectively referred to as "Defendants."

6.      This case involves claims of handicap discrimination in violation of the federal Fair Housing Amendments Act of 1988, 42 USC § 3604 ("FHAA") and of disability discrimination in violation of Michigan's Persons with Disabilities Civil Rights Act, MCL §§ 37.1501-37.1507 ("PWDCRA").

7.      The Court has subject matter jurisdiction of the federal claims asserted in this action under is action under 28 USC § 1331 because the action arises under the laws of the United States, including the Fair Housing Amendments Act, 42 USC § 3601, *et seq.*

8.      Under 28 USC § 1367, this Court has supplemental jurisdiction over Plaintiff's claims under Michigan's Persons with Disabilities Civil Rights Act, MCL 37.1501 *et seq.*, where the claims arise from a common nucleus of related facts and are so related to the federal claims within the original jurisdiction of this Court that they form part of the same case or controversy.

9.      There are no administrative prerequisites under the FHAA and the PWDCRA to the filing of this action by Plaintiff.

10.     Plaintiff's complaint is timely, as it is filed within the applicable two- and three-year statutes of limitations periods applicable to claims under the FHAA and the PWDCRA, respectively.

11.     Venue is proper in the Eastern District of Michigan, Southern Division, under 28 USC § 1391(b)(1) where the substantial part of the events giving rise to this action occurred in this District, Plaintiff resides in this District, Defendants conduct business in this District, and the residential rental property that is the subject of this action is located in this District.

## FACTUAL ALLEGATIONS

12.     Plaintiff incorporates by reference and realleges all the other allegations as if fully stated herein.

13.     On or about July 30, 2017, Plaintiff Tetyana Spolitak signed a "Month-to-Month Room Lease Agreement" with Defendant State Serene, LLC for the rental of a room in a building located on State Street in Ann Arbor, in Washtenaw County, Michigan.

14.     Ms. Spolitak moved into the residence the same day she signed the lease, July 30, 2017.

15.     From July 30, 2017, through October 2023, Ms. Spolitak was current in her payments under the lease.

16.     Ms. Spolitak received benefits under Social Security Disability, with which she paid her rent.

17.     Because her receipt of benefits was relevant to the timing of her rent payments, the manager of the building, Mark Loy, had been informed of her SSDI benefits well before October 2023.

18.     From July 30, 2017, until on or about October 10, 2023, Defendants made no effort to terminate the lease agreement.

19.     A few years after moving into the room in Defendants' State Street building in Ann Arbor, Ms. Spolitak, now age 63, was diagnosed with breast cancer.

20.     By September 2023, Ms. Spolitak's breast cancer had progressed to Stage 4 and had metastasized to her lungs.

21.     In 2023, Ms. Spolitak underwent several major surgeries, including mastectomy, lung resection, stomach ulcer perforation and stereostatic radiosurgery. In the fall of 2023, she was receiving chemo- and targeting therapy and was facing additional surgeries, procedures and treatment related to her cancer.

22.     The combination of the cancer treatment, including its side effects, and the abdominal surgery had left Ms. Spolitak extremely weak and resulted in altered bowel functioning. As a result, in September 2023, Ms. Spolitak inadvertently left a small amount of feces on the toilet of a shared bathroom on the first floor.

23.    Defendants became aware of Ms. Spolitak's declining health and increasing disability when they received a complaint about the bathroom from another tenant.

24.    When she was informed of the complaint, Ms. Spolitak immediately remedied the problem, cleaning the bathroom and buying additional disinfectants.

25.    No other issues regarding Ms. Spolitak's use of the bathroom were raised after late September.

26.    On or about October 4, 2023, Defendants, through their attorney, James Fink, filed a Demand for Possession based on the alleged health hazard — which had already been eliminated — in the shared bathroom (Exhibit 8).

27.    Ms. Spolitak submitted a timely response to the Demand for Possession on or about October 10, 2023 (Exhibit 9) in which she again described her disability and the treatment she was undergoing and added that she had discussed the bathroom issue with Defendants' manager, Mark Loy.

28.    Defendants' attorney, James Fink, acknowledged that the bathroom issue was resolved and that no action was being taken on the Demand for Possession (Exhibit 1, email).

29.    On October 10, 2023, the same day Ms. Spolitak advised Defendants, through their counsel, that the alleged bathroom issue had already been remedied, she received a Notice to Quit, informing her that her month-to-month tenancy was being terminated.

30.     The Notice, presented under the authority of MCL 554.134(1), was dated —
incorrectly — November 6, 2023 (Exhibit 2).

31.     MCL 554.134(1) allows a Notice to Quit for a month-to-month tenancy, but
requires the landlord to allow 30 days' notice for the tenant to quit the premises.

32.     The Notice to Quit, dated November 6 but mailed earlier, gave Ms. Spolitak
until November 8, 2023, to move out.

33.     No reason was given for the decision to end the month-to-month arrangement
after more than six years.

34.     To Ms. Spolitak's knowledge, no other resident of the building saw their month-
to-month arrangement abruptly terminated, with no reason given, in the fall of 2023.

35.     On or about October 27, Ms. Spolitak attempted to pay her monthly rent, but
her payment was rejected.

36.     After receiving the Notice to Quit in October, Ms. Spolitak contacted the Fair
Housing Center of Southeast and Mid Michigan ("Fair Housing Center") on or about
October 19, 2023.

37.     The Fair Housing Center contacted Defendants' Attorney, Mr. Fink, in late
October/early November about the Notice to Quit.

38.     On November 4, 2023, Defendants, through their attorney, sent a second Notice
to Quit on Ms. Spolitak, giving her until November 6 — just two days after the notice
— to move out (Exhibit 3).

39.    In a November 6, 2023, email exchange with the Fair Housing Center, about the initial Notice to Quit, Defendants' attorney stated that the Notice was not related to the earlier Demand for Possession: "[The Notice] is a simple end of month to month tenancy case. The toilet/bathroom incident was resolved and my client did not file a case for that. If you have a proposed move-out date, I will take it to my client." (Exhibit 1).

40.    Also on November 6, 2023, Ms. Spolitak wrote to Defendant Naomi Loy to ask that she be allowed to continue as a tenant while she was in active treatment and recovery.[6] She again informed Ms. Loy that she was in active treatment for advanced cancer and undergoing chemotherapy, described some of her surgeries, and her continuing need for medical treatment and procedures. Moving out in her current condition would be "impossible," she wrote, causing "physical and emotional stress that would be negatively affecting health conditions." She asked Ms. Loy and her daughter to "[p]lease request to your hearts" and grant her plea for additional time (Exhibit 10).

41.    Around this time, Defendants were also provided a letter from Michigan Medicine attesting that Ms. Spolitak was on disability (Exhibit 11).

_____

[6] In the letter, Ms. Spolitak also again assured Ms. Loy that the bathroom issue had been resolved.

42.     On or about November 7 and again on November 9, 2023, the FHA e-mailed Mr. Fink, advising him again of the severity of Ms. Spolitak's disability, reminding him that the alleged bathroom issue had been resolved (as he had acknowledged) and asking that Defendants forego filing Summary Proceedings and instead allow Ms. Spolitak to remain in the unit until no later than September 30, 2024. (Exhibit 4).

43.     In the November 9, 2023, letter, the Fair Housing Center also advised Mr. Fink that the timeline of his actions on behalf of Defendants appeared "problematic." The decision to terminate the month-to-month lease, the Fair Housing Center wrote, appeared to be based on Ms. Spolitak's disability and therefore constituted discrimination under and indicative of an intent to discriminate under the FHAA (Exhibit 4).

44.     On or about November 9, 2023, Defendants' attorney, Mr. Fink, offered a continuation of Ms. Spolitak's lease through January 1, 2024 (Exhibit 5).

45.     On or about December 12, 2023, Ms. Spolitak, through the Fair Housing Center, reiterated her request for a continuation through September 30, 2024, as an accommodation, again stressing her need for stable housing. The Fair Housing Center, on behalf of Ms. Spolitak, queried, "[W]hat is the undue burden caused by allowing her to stay until the end of September. She has lived there for the past six years without issue?" (Exhibit 6).

46.     On December 12, 2023, Defendants, through their attorney, rejected any extension and threatened to file suit that week (Exhibit 6). Their email provided no reason for the refusal, or justification for Defendants urgency in terminating the lease agreement.

47.     As of December 18, 2023, Ms. Spolitak had not received notice of any legal action against her by Defendants.

48.     The uncertainty around her living arrangements has caused Ms. Spolitak undue stress and is further undermining her already fragile health.

### COUNT I
### VIOLATION OF FAIR HOUSING ACT
### INTENTIONAL DISCRIMINATION ON THE BASIS OF DISABILITY

49.     Plaintiff Tetyana Spolitak incorporates by reference and realleges all other allegations as if fully incorporated herein.

50.     It is a violation of the Fair Housing Act to "discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of … a person residing in or intending to reside in that dwelling after it is so sold, rented or made available," 42 USC §3604(f)(2).

51.     Federal case law recognizes that a landlord's termination of a lease may still violate the FHAA if the termination discriminates against a renter because of his or her handicap. "Discriminatory treatment may be found when the discriminatory actions

are otherwise legal; the FHAA was enacted specifically because landlords were using their otherwise legal discretion to discriminatory ends." *Perez v. Cambeyro*, 2015 US Dist LEXIS 175721, *16 (SD Fla, September 1, 2015) (Exhibit 12), citing *Tex Dept of Housing and Cmty Affairs v. Inclusive Cmtys Project, Inc,* 135 S Ct 2507, 2521; 192 L Ed 2d 514 (2015).

52.     Ms. Spolitak, a Stage 4 cancer patient undergoing chemotherapy and other medical treatment, was at all times a handicapped person as defined by the FHAA[7].

53.     The evidence surrounding Defendants' decision to terminate Ms. Spolitak's month-to-month lease shows that the decision was based on her disability and was therefore discriminatory.

54.     Defendants became aware of the severity of Ms. Spolitak's disability in September 2023 as a result of a complaint — which was quickly addressed — about a mishap, stemming from Ms. Spolitak's disability, in the shared bathroom.

55.     Although Ms. Spolitak, humiliated, had already addressed the complaint regarding the bathroom and ensured no repeat of the incident occurred, Defendants moved aggressively to force her out of the room she had rented without incident or complaint for more than six years.

---

[7] The federal law uses the term "handicap" instead of "disability"; Plaintiff's use of the term here follows the statutory language, however, courts view the term as synonymous with "disability," which is used elsewhere in this complaint. See *Giebeler v. M & B Assoc.,* 343 F 3d 1143, 1146, n 2 (CA 9, 2003) and *Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F 3d 531, 538, n.1 (CA 6, 2014).

56.     Defendants immediately went into high gear, sending Ms. Spolitak a Demand for Possession, and converting a minor mishap that was easily cured into a "serious and continuing health hazard" that warranted a threatened eviction.

57.     Defendants subsequent actions demonstrated that they were not really interested in any cure of the alleged "health hazard," but simply wanted Ms. Spolitak, a person with a disability, out of their building.

58.     Within days of sending the Demand for Possession, [8] Defendants ratcheted up their efforts to force Ms. Spolitak out by sending her a Notice to Quit (improperly and erroneously postdated to November 6), before she had a chance to respond in writing to their October 4, 2023, Demand and its threat of eviction.

59.     Defendants increased the threat of the Notice to Quit by requiring Ms. Spolitak, a seriously ill woman, to vacate her home of more than six years in less than 30 days from her receipt of the erroneously dated Notice.

60.     When directly informed by the Fair Housing Center and Ms. Spolitak of the severity of Ms. Spolitak's disability and her need for stability, the Defendants further revealed their discriminatory intent by increasing their efforts to make her move and sending a second Notice to Quit.

61.     The second Notice to Quit allowed Ms. Spolitak just two days to move out.

---

[8] Plaintiff submits it is fair to assume the Notice, sent by First Class Mail and received on Tuesday, October 10, 2023, was sent from 2 to 6 days earlier.

62.    Defendants gave no reason for the sudden decision to force Ms. Spolitak from her home.

63.    In response to communications from Ms. Spolitak and her advocate, the Fair Housing Center, Defendants offered to continue her lease only until January 1, 2024, an accommodation that was inadequate.

64.    When advised that the stingy continuation failed to provide the stability Ms. Spolitak required to prevent further deterioration of her health, Defendants not only refused to consider any reasonable accommodation that would meet Ms. Spolitak's needs, but threatened immediate legal action.

65.    Where Defendants had no reason for their sudden request that Ms. Spolitak quit the room she had rented for more than six years, and where the request was made on the heels of their discovery of the severity of Ms. Spolitak's condition, and where no other tenants were asked to move out at that time, the evidence establishes Defendants' intent to discriminate against Ms. Spolitak on the basis of her disability and violates the FHAA.

66.    This discriminatory intent is even more apparent where Defendants' conduct demonstrates that there is no urgent need for Ms. Spolitak's removal. Defendants have acknowledged they can wait until at least January 1, 2024, but have presented no reason — other than their own bias against a woman with a disability — for the aggressiveness with which they are now seeking to evict a long-term tenant.

67.    As a direct and proximate result of Defendants' actions and practices in violation of the FHAA, Ms. Spolitak, who required stability and peace while she undergoes painful and debilitating treatment for her cancer, has suffered emotional distress, such as, embarrassment; humiliation; anxiety; loss of personhood and a violation of her civil rights; and pain and suffering.

68.    WHEREFORE, Plaintiff Tetyana Spolitak asks this Honorable Court to order Defendants to forego eviction proceedings, to allow Plaintiff to continue to lease her room at Defendants' building until no later than September 30, 2024, or until such other date as this Court determines is just and reasonable, and to enter judgment in favor of Plaintiff and against Defendants in an amount this Court deems reasonable, to include an award for non-economic damages, punitive damages, costs, interest and attorneys' fees to the extent allowed by law and as the Court may find just and proper.

## COUNT II
## VIOLATION OF FAIR HOUSING ACT
## DISCRIMINATION ON THE BASIS OF DISABILITY
## REFUSAL TO PERMIT REASONABLE ACCOMMODATION

69.    Plaintiff Tetyana Spolitak incorporates by reference and realleges all other allegations as if fully incorporated herein.

70.    Discrimination under the Fair Housing Act includes:

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 USC § 3604 (f)(3).

71.     Ms. Spolitak requested a reasonable accommodation in rules, policies, practices or services under 42 USC § 3604 (f)(3) when she asked Defendants to allow her to continue as a tenant until at least September 30, 2024, as an accommodation for her disability.

72.     To establish a reasonable accommodation claim, a plaintiff must show that (1) she is a person with a disability, (2) she requested an accommodation, (3) the defendant housing provider refused to make the accommodation, (4) the accommodation was reasonable and necessary, and (5) the defendant knew or should have known about the disability at the time of the refusal. *Hollis v. Chestnut Bend Homeowners Ass'n.*, 760 F 3d 531, 541 (CA 6, 2014).

73.     The FHAA defines "handicap" as a "physical or mental impairment which substantially limits one or more ... major life activities." 42 USC 3602(h). The Code of Federal Regulations defines this physical or mental impairment to include diseases or conditions such as "epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease." Ms. Spolitak, with Stage 4 breast cancer, is a person with a handicap under the law.

74.     In letters to Defendants, Plaintiff and her advocate, the Fair Housing Center, established that the requested accommodation was necessary, stressing Ms. Spolitak's frailty, and her need to avoid the disruption, stress and consequent negative effects on her health that a move would occasion. The accommodation is further required to

ensure Ms. Spolitak the same peace of mind as other tenants, who are not asked to move out on 30 days' notice without cause.

75.     The requested accommodation — simply to allow a long-term tenant in good standing to continue to reside in the unit she had rented for more than six years — was reasonable. It imposes "no 'fundamental alteration in the nature of the program' or 'undue financial and administrative burdens.'" *Howard v. City of Beavercreek*, 276 F3d 802, 805-06 (CA 6, 2002).

76.     Defendants have refused Ms. Spolitak's request, and countered with a proposed accommodation that is unreasonable in that it fails to address Ms. Spolitak's needs, and similarly fails to demonstrate that the requested accommodation will in any way cause any harm whatsoever to Defendants. Defendants have therefore denied Ms. Spolitak a reasonable accommodation and violated the FHAA.

77.     As a result of Defendants' disability discrimination, Ms. Spolitak, who required stability and peace while she underwent painful and debilitating treatment for her cancer, has suffered emotional distress, such as, embarrassment; humiliation; anxiety; loss of personhood and civil rights; and pain and suffering.

78.     WHEREFORE, Plaintiff Tetyana Spolitak asks this Honorable Court to order Defendants to forego eviction proceedings, to allow Plaintiff to continue to lease her room at Defendants' building until no later than September 30, 2024, or until such other date as this Court determines is just and reasonable, and to enter judgment in

favor of Plaintiff and against Defendants in an amount this Court deems reasonable, to include an award for non-economic damages, punitive damages, costs, interest and attorneys' fees to the extent allowed by law and as the Court may find just and proper.

## COUNT III
## RETALIATION UNDER THE FAIR HOUSING ACT

79.    Plaintiff Tetyana Spolitak incorporates by reference and realleges all other allegations as if fully incorporated herein.

80.    Under 42 USC § 3617 it is unlawful for a housing provider to "coerce, intimidate, threaten, or interfere" with the exercise or enjoyment of rights protected under the FHA.

81.    A plaintiff states a claim under § 3617, when she shows "(1) that [s]he exercised or enjoyed a right guaranteed by §§ 3603–3606; (2) that the defendant's intentional conduct constituted coercion, intimidation, threat, or interference; and (3) a causal connection between [her] exercise or enjoyment of a right and the defendant's conduct." *Hood v. Midwest Sav Bank,* 95 Fed Appx 768, 779 (CA 6, 2004).

82.    Ms. Spolitak exercised a protected right when, with the assistance of the Fair Housing Center, she alleged in an email that Defendants' conduct in seeking to terminate her lease appeared to be discrimination on the basis of disability.

83.    Ms. Spolitak exercised a protected right when she requested a continuation of her lease as a reasonable accommodation for her disability under 42 USC § 3604(f)(3).

84.     Defendants retaliated against Ms. Spolitak for her exercise of her protected rights when they threatened immediate eviction after she rejected their offer of a brief continuation of her lease that failed to reasonably accommodate her needs and repeated her assertion that Defendants' conduct appeared to be discriminatory (Exhibit 6).

85.     Defendants' December 12 email, rejecting Ms. Spolitak's request and immediately threatening legal action demonstrates a causal connection between Ms. Spolitak's exercise of her right and the Defendant's conduct.

86.     Defendants' retaliatory threat violated Ms. Spolitak's rights under the Fair Housing Act.

87.     WHEREFORE, Plaintiff Tetyana Spolitak asks this Honorable Court to order Defendants to forego eviction proceedings, to allow Plaintiff to continue to lease her room at Defendants' building until no later than September 30, 2024, or until such other date as this Court determines is just and reasonable, and to enter judgment in favor of Plaintiff and against Defendants in an amount this Court deems reasonable, to include an award for non-economic damages, punitive damages, costs, interest and attorneys' fees to the extent allowed by law and as the Court may find just and proper.

## COUNT IV
## INTENTIONAL DISCRIMINATION UNDER THE STATE OF MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

88.     Plaintiff Tetyana Spolitak incorporates by reference and realleges all other allegations as if fully incorporated herein.

89.    Like its federal counterpart, Michigan's Persons with Disabilities Civil Rights Act, MCL 37.1502(1), forbids discrimination in a "real estate transaction" on the basis of a disability of a buyer or renter "or of a person residing in or intending to reside in a dwelling after it is … rented." A refusal to rent a property to an individual with a disability is a violation of Michigan's law, MCL 37.1502(2).

90.    Intentional discrimination on the basis of a disability is shown where Defendants, after renting to Ms. Spolitak without issue for more than six years, presented her with a Notice to Quit just days after becoming aware of the severity of her disability.

91.    Where there was no reason to deny Ms. Spolitak, a person with a disability, the peace of mind that comes from a stable living arrangement, it can be presumed that Defendants' sudden decision to terminate Ms. Spolitak's residency was based on her disabilities, and/or stereotypes about the abilities of those who suffer from late-stage cancer, and was a form of intentional disability discrimination.

92.    As a direct and proximate result of Defendants' actions and practices in violation of the PWDCRA, Ms. Spolitak, who required stability and peace while she underwent painful and debilitating treatment for her cancer, has suffered emotional distress, such as, embarrassment; humiliation; anxiety; loss of personhood and a violation of her civil rights; and pain and suffering.

93.     WHEREFORE, Plaintiff Tetyana Spolitak asks this Honorable Court to order Defendants to forego eviction proceedings, to allow Plaintiff to continue to lease her room at Defendants' building until no later than September 30, 2024, or until such other date as this Court determines is just and reasonable, and to enter judgment in favor of Plaintiff and against Defendants in an amount this Court deems reasonable, to include an award for non-economic damages, punitive damages, costs, interest and attorneys' fees to the extent allowed by law and as the Court may find just and proper.

**COUNT V**
**REFUSAL TO PERMIT REASONABLE ACCOMMODATION VIOLATING MICHIGAN'S PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**

94.     Plaintiff Tetyana Spolitak incorporates by reference and realleges all other allegations as if fully incorporated herein.

95.     Michigan's Persons with Disabilities Civil Rights Act provides that "[t]he opportunity to obtain … housing … without discrimination because of a disability is guaranteed by this act and is a civil right." MCL 37.1102(1). Section 502 of the law prohibits discrimination in a rental transaction on the basis of disability, MCL 15.1502.

96.     Section 1506a(1)(b) of the PDWCRA, mirroring the language of FHAA Section 3604(f)(3)(A), prohibits a landlord from refusing "to make reasonable accommodations in rules, policies, practices, or services, when the accommodations may be necessary to afford the person with a disability equal

opportunity to use and enjoy residential real property."

97.     Michigan courts have recognized that when interpreting provisions of the PWDCRA, analogous federal precedents are persuasive, *Chmielewski v. Xerma, Inc.*, 457 Mich 593, 601; 580 NW 2d 817 (1998). Michigan courts interpreting the accommodation provision of the PWDCRA, MCL 37.1506a(1)(a) and (b), have followed analogous federal law, *Bachman v. Swann Harbour Ass'n,* 252 Mich App 400, 416; 653 NW 2d 415 (2002).

98.     As stated in Count II, above, analogous federal law requires landlords to make reasonable accommodations where a plaintiff shows that (1) she is a person with a disability, (2) she requested an accommodation, (3) the defendant housing provider refused to make the accommodation, (4) the accommodation was reasonable and necessary, and (5) the defendant knew or should have known about the disability at the time of the refusal. *Hollis v. Chestnut Bend Homeowners Ass'n*, supra.

99.     As stated in paragraphs 69 to 78 in Count II above, Ms. Spolitak has stated a claim for a reasonable accommodation: She is a person with a disability, she requested the accommodation, Defendants have rejected her request by refusing to provide her the reasonable accommodation she requires; Defendants were well aware of her disability at the time they refused her reasonable request.

100.   Defendants' unreasonable refusal to forego unwarranted eviction proceedings and instead modify the lease agreement to allow Ms. Spolitak to continue her tenancy until no later than September 30, 2024, was discrimination on the basis of disability.

101.   As a direct and proximate result of Defendants' actions and practices in violation of the PWDCRA, Ms. Spolitak, who requires stability and peace while she undergoes painful and debilitating treatment for her cancer, has suffered emotional distress, such as, embarrassment; humiliation; anxiety; loss of personhood and a violation of her civil rights; and pain and suffering.

102.   WHEREFORE, Plaintiff Tetyana Spolitak asks this Honorable Court to order Defendants to forego eviction proceedings, to allow Plaintiff to continue to lease her room at Defendants' building until no later than September 30, 2024, or until such other date as this Court determines is just and reasonable, and to enter judgment in favor of Plaintiff and against Defendants in an amount this Court deems reasonable, to include an award for non-economic damages, punitive damages, costs, interest and attorneys' fees to the extent allowed by law and as the Court may find just and proper.

## COUNT VI
## RETALIATION UNDER THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

103.   Plaintiff Tetyana Spolitak incorporates by reference and realleges all other allegations as if fully incorporated herein.

104.   Like its federal counterpart, Michigan's Persons with Disabilities Civil Rights Act prohibits retaliation against a person "because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.1602(a).

105.   Defendants violated Ms. Spolitak's rights under the PWDCRA when a) they threatened to evict her after she opposed a violation of the law by alleging that Defendants' conduct in terminating her lease appeared to be discriminatory and b) when they threatened immediate eviction after Ms. Spolitak asserted her right to a reasonable accommodation.

106.   WHEREFORE, Plaintiff Tetyana Spolitak asks this Honorable Court to order Defendants to forego eviction proceedings, to allow Plaintiff to continue to lease her room at Defendants' building until no later than September 30, 2024, or until such other date as this Court determines is just and reasonable, and to enter judgment in favor of Plaintiff and against Defendants in an amount this Court deems reasonable, to include an award for non-economic damages, punitive damages, costs, interest and attorneys' fees to the extent allowed by law and as the Court may find just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, for all the reasons stated in this Complaint for Injunctive, Declaratory and Other Relief, Plaintiff asks this Honorable Court for the following relief:

- Order Defendants State Serene, LLC and Naomi W. Loy, pursuant to 42 USC § 3613(3)(c)(1) and MCL 37.1606(1) to forego eviction proceedings and modify the month-to-month lease agreement with Plaintiff to extend her lease of Room 1 of Defendants' State Street building in Ann Arbor, Michigan, until September 30, 2024, or such other date as this Court deems reasonable.

- Enter judgment in favor of Plaintiff and against Defendants in an amount this Court deems reasonable, together with an award for actual, non-economic and/or compensatory damages, under 42 USC § 3613(3)(c)(1) and MCL 37.1606(3), as compensation for the emotional distress, such as, embarrassment; humiliation; anxiety; loss of personhood and a violation of her civil rights (discrimination based on disability); and pain and suffering Plaintiff has suffered as a result of the uncertainty Defendants have placed over her residency through their discriminatory acts at a time when Plaintiff most needs stability and peace.

- Enter judgment in favor of Plaintiff and against Defendants in an amount this Court deems reasonable, together with an award for punitive damages

under 42 USC § 3613(3)(c)(1) and MCL 37.1606(3), where Defendants denied Plaintiff's requests when they knew or should have known that Defendants were in violation of the law and knew that their actions would cause stress, anxiety and deterioration in Plaintiff's health.

- Enter judgment in favor of Plaintiff and against Defendants and award Plaintiff's costs, interest, and reasonable attorneys' fees, as allowed under 42 USC § 3613(3)(c)(2) and MCL 37.1606(3), to the extent allowed by law and as the Court may find just and proper.

Respectfully submitted,

**GWINN LEGAL PLLC**

*/s/Daniel A. Gwinn*
_____
Daniel A. Gwinn (P53663)
Laura Bradshaw-Tucker (P42652)
Co-Counsel for Plaintiff
900 Wilshire Drive, Ste. 104
Troy, MI 48084
(248) 970-0310

Dated: December 19, 2023

**FAIR HOUSING CENTER OF METROPOLITAN DETROIT**

*/s/ Steve Tomkowiak*
_____
Steve Tomkowiak (P40042)
Co-Counsel for Plaintiff
5555 Conner St., Suite 244
Detroit, MI 48213
(313) 579-3247 x 6
stomkowiak@fairhousingdetroit.org

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

TETYANA SPOLITAK,

       Plaintiff,

Case No.: 23- _____

v.

Hon.

STATE SERENE, LLC,
a Michigan limited liability company,

Magistrate-Judge

and

NAOMI W. LOY,

       Defendants.

_____/

## PLAINTIFF TETYANA SPOLITAK'S DEMAND FOR JURY TRIAL

     Plaintiff Tetyana Spolitak, through her attorneys Daniel A. Gwinn and Laura

K. Bradshaw-Tucker of GWINN LEGAL, PLLC, and Steve Tomkowiak of the FAIR

HOUSING CENTER OF METROPOLITAN DETROIT, demands a jury trial in the

above-captioned matter.

               Respectfully submitted,

**GWINN LEGAL PLLC**

*/s/Daniel A. Gwinn*

_____
Daniel A. Gwinn (P53663)
Laura Bradshaw-Tucker (P42652)
Co-Counsel for Plaintiff
900 Wilshire Drive, Ste. 104
Troy, MI 48084
(248) 970-0310

**FAIR HOUSING CENTER OF
METROPOLITAN DETROIT**

*/s/ Steve Tomkowiak*

_____
Steve Tomkowiak (P40042)
Co-Counsel for Plaintiff
5555 Conner St., Suite 244
Detroit, MI 48213
(313) 579-3247 x 6
stomkowiak@fairhousingdetroit.org

Dated: December 19, 2023